UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | No. 2:09-CR-48 |
| ) | |
| RONALD WILLIAM ABRAM, JR. ) | |
| CAROL HURST ABRAM ) | |

## **REPORT AND RECOMMENDATION**

These defendants, husband and wife, are the parents of Ronald William Abram III ("Abram III"). Abram III has been indicted in the United States District Court for the District of Hawaii for stealing military property while he was a United States Marine stationed in Hawaii.

His parents are indicted in this court for receiving and concealing the property stolen by their son, and for obstructing the administration of justice. They also are charged with specific substantive acts of receiving and concealing stolen property, as well as making false statements to law enforcement agents.

On March 30, 2009, the magistrate judge of this court issued a warrant to search the residence property of these defendants at 288 Jonesboro Drive in Bluff City, Tennessee, for military property stolen by Abram III, and any other evidence related thereto.[1] A significant

---
[1]Exhibit 1.

amount of evidence was discovered and seized.[2]

The defendant Carol Abram has filed a motion to suppress all evidence seized upon the execution of this court's warrant. (Doc. 57). The motion has been referred to the magistrate judge pursuant to the standing order of this Court and 28 U.S.C. § 636. A hearing was held on May 25, 2010.

Noting that the affidavit supplies "abundant information" that Abram III stole military equipment, Carol Abram nevertheless argues that the affidavit fails to establish a nexus between any criminal activity and her residence at 288 Jonesboro Drive in Bluff City. She also argues that the affiant relied upon the statements of informants, and there was no effort to ascertain the veracity and reliability of those informants. Lastly, she contends that any information in the affidavit regarding her residence was stale and could not support a finding of probable cause.

The probable cause to search a premises has been defined by the Supreme Court as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The court is to determine probable cause on the totality of the circumstances. *Id.* "The probable cause requirement . . . is satisfied if the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *United States v. Beasase*, 521 F.2d 1306, 1307 (6th Cir. 1975).

---

[2] *Id.*

Probable cause may be established based on information from any reliable source. *See, Draper v. United States*, 358 U.S. 307, 313 (1959). When a defendant argues that a search warrant was issued without probable cause, the reviewing court is to look no further than the "four corners" of the affidavit. *See, United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003).

As defendant correctly points out, an affidavit filed in support of an application for a search warrant must establish that there is a connection between the alleged criminal conduct and the place to be searched. "[W[hether a sufficient nexus has been shown to a particular location turns in part on the type of crime being investigated, the nature of the things to be seized, the extent of an opportunity to conceal the evidence elsewhere, and the normal inferences that may be drawn as to likely hiding places." *United States v. Savoca*, 761 F.2d 292, 298 (6th Cir.) *cert*. denied, 474 U.S. 852 (1985).

With regard to defendant's argument that the information in the affidavit was stale, it must be recalled that there is no arbitrary, bright-line time limitation on the age of the information. Rather, the court is to consider the age of the information in relation to the nature of the crime, the criminal, the place to be searched, and the thing to be seized, in determining whether the information is sufficiently fresh to constitute probable cause. *See, e.g., United States v. Spikes,* 158 F.3d 913, 923-24 (6th Cir. 1998).

As Ms. Abram concedes in her brief, the affidavit supplies overwhelming probable cause to believe that her son, Abram III, and some fellow Marines stole a considerable

3

amount of military property while on duty in Hawaii. The only question now before this court is whether there was probable cause to believe that evidence of Abram III's thievery would be found at 288 Jonesboro Road in Bluff City, Tennessee. It must be emphasized that the warrant that was issued on the basis that there was concealed somewhere on the property at 288 Jonesboro Road evidence of Abram III's criminal activity.[3] That the evidence ultimately discovered and seized as a result of that search might implicate either or both of Abram III's parents is of no significance.

First, there is an obvious connection between 288 Jonesboro Road in Bluff City and Abram III simply because that is his "Home of Record" as shown in his military Service Record.[4] After his arrest on October 28, 2998, Abram III told investigators that his home was 288 Jonesboro Road in Bluff City, Tennessee. Mr. Abram III enlisted in the Marine Corp. from Sullivan County, Tennessee.[5] Thus, there is a strong and logical relationship between Abram III and 288 Bluff City Road in Jonesboro; it was and is his home.

The affidavit is lengthy, and there is no need to paraphrase it in its entirety; relatively few paragraphs concern the question of probable cause to search 288 Jonesboro Road in Bluff City, and only those paragraphs need be discussed herein.

Mark Vaught was involved with Abram III and other individuals in the theft and sale

---

[3] Affidavit, ¶ 52.

[4] Affidavit, ¶ 21.

[5] *Id*.

of military equipment; they were arrested on October 28, 2008.⁶  In February and March 2009, Vaught gave statements to investigators that indicated that evidence of Abram III's criminal activity likely would be found at 288 Jonesboro Road in Bluff City, Tennessee.  On February 26, 2009, Vaught told the agents that he accompanied Abram III on an airline flight to Johnson City.  During that flight, Vaught saw Abram III in possession of various military equipment, including a receiver for an M-16 rifle, 5.56 mm rifle magazines, Rifle Combat Optics, a spotting scope, and miscellaneous rifle parts.  Vaught was aware at that time that Abram III was staying at his parents' home in Bluff City, Tennessee.⁷

Defendant argues that this paragraph, i.e., paragraph 39, suggests that the incident described by Vaught occurred during the flight itself.  However, the Supreme Court has recognized that the issuing magistrate is to consider an affidavit filed in support of an application for a search warrant in a commonsensical, not a hyper-technical, manner**.** *Illinois v. Gates*, 462 U.S. 213, 236 (1983).  This issuing magistrate judge immediately recognized, as would anyone, that the affiant was describing an incident that occurred at the airport in Hawaii, not on the flight itself.⁸

Defendant also argues that this incident at the Hawaii airport occurred on March 13, 2008, over a year prior to the issuance of the warrant, and therefore was stale information.

---

⁶Affidavit, ¶ 25.

⁷Affidavit, ¶ 39.

⁸Affidavit, ¶ 45.

However, the information in paragraph 39, like the bulk of the information in this lengthy affidavit, simply provides necessary background information and context to the information that ultimately establishes probable cause to believe that evidence of Abram III's criminal activity would be found at 288 Jonesboro Road in Bluff City.

During that same statement on February 26, 2009, Vaught also told investigators that, while sharing a cell with another co-defendant, Carper, he was told by Carper that Abram III was "shipping gear back home (to the continental United States)."[9] Most damning of all, Vaught told the investigators that, a few days after being released from the federal detention center, he was told by Abram III that he had shipped gear back home to his parents' house, and his father had buried it in the back yard.[10] Bearing in mind that Abram III and Vaught were arrested on October 28, 2008, it necessarily follows that Vaught had this conversation with Abram III some time after October 28, 2008. Thus, when ultimately communicated to the magistrate judge in the affidavit, the information was not more than five months old. Bearing in mind the nature of the criminal activity; the fact that defendant was stationed in Hawaii; that his home was 288 Jonesboro Road in Bluff City, Tennessee; *that he told a co-defendant that he was shipping the stolen goods to his home and that his father had buried it in the back yard*; it was extremely likely that there was stolen property concealed at his home in Bluff City, Tennessee, five months after he made the statement to Vaught. The

---

[9] ¶ 41.

[10] Affidavit, ¶ 41.

6

information was not stale.

Defense counsel's argument that all the contraband was found in the house, not buried in the back yard, is beside the point; the question is one of probable cause only. Abram III's statements to Vaught that he was shipping stolen military gear back to his parents' home was more than sufficient to establish probable cause that somewhere in, on, or about that property there was concealed stolen military gear. The fact that Abram III was mistaken when he said that his father had buried it is of no significance to the question of whether there was probable cause to believe that stolen military property was somewhere concealed on that property. Abram III believed the goods were buried in the back yard, and that is all that matters.

Lastly, defendant argues that the affidavit failed to establish the reliability and veracity of the information supplied by the "informants," Carper and Vaught. Under Rule 41(c)(1) of the Federal Rules of Criminal Procedure, an affidavit supporting a search warrant may be based upon hearsay. With respect to information in an affidavit supplied by an informant, at one time the Supreme Court required that the issuing judge be informed of facts sufficient to enable him to determine (1) the credibility of the informant, and (2) the reliability of the informant's information. *See, Aguilar v. Texas*, 378 U.S. 108 (1964); *Spinelli v. United States*, 393 U.S. 410 (1969). The *Aguilar-Spinelli* test ultimately was abandoned in favor of the "totality of the circumstances" method of determining probable cause; an informant's reliability and the basis for his knowledge are simply factors to

consider in the totality of the circumstances. *Gates*, 462 U.S. at 238.

Defendant's argument regarding the need to establish the veracity and reliability of these two so-called informants is mis-directed. The informants in this case were not confidential or anonymous; they were identified by name. A named informant is recognized to be inherently more reliable than an anonymous tipster. *See, e.g., United States v. May*, 399 F.3d 817 (6th Cir. 2005). Moreover, a statement against an informant's penal interest may provide a basis to credit his reliability, *even if he is unidentified. See, United States v. Harris*, 403 U.S. 573 (1971). Here, not only were the informants identified, their statements were against their own penal interests. Lastly, the credibility of an informant and the reliability of his information may be satisfied if he describes the overall criminal activity in detail. *See, e.g., United States v. Swihart*, 554 F.2d 264 (6th Cir. 1977). Abram III's own admissions of his criminal conduct and his statement to Vaught that he had shipped the stolen property to his home in Tennessee for burial in his back yard, coupled with Vaught's complicity in the criminal activity and his detailed knowledge of it, more than established Vaught's reliability.

When the affidavit was first presented to the magistrate judge in March 2009, he was of the opinion that it established probable cause to believe that evidence of Abram III's criminal conduct would be found at his home at 288 Jonesboro Road in Bluff City, Tennessee. He remains of that same opinion.

Therefore, it is respectfully recommended that defendant's motion to suppress, (Doc.

57), be denied.[11]

Respectfully submitted,

s/ Dennis H. Inman
United States Magistrate Judge

---

[11]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).